IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DOMINIQUE BASTOS, as
Personal Representative of the
Estate of Urs Anderegg, deceased,

        Plaintiff,

v.

KELOWNA FLIGHTCRAFT,
LTD., et al.,

        Defendants.

Case No. 2:10-cv-946
JUDGE SARGUS
MAGISTRATE JUDGE ABEL

## OPINION AND ORDER

This matter is presently before the Court for consideration of Plaintiff's Motion to Remand (Doc. 15). For the reasons set forth below, Plaintiff's motion is **GRANTED**.

I.

On September 1, 2008, Decedent Urs Anderegg ("Anderegg") was killed in a plane crash in Pickaway County, Ohio. (Compl. ¶ 5.) Plaintiff Dominique Bastos brings claims on behalf of Anderegg's estate against Defendants Kelowna Flightcraft, Ltd. and Kelowna Flightcraft, R & D with claims for negligence and strict liability. Plaintiff initially filed suit in the Court of Common Pleas of Pickaway County. On October 19, 2010, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441 on the grounds that diversity of citizenship exists among the Parties and the amount in controversy between them exceeds $75,000. (*See* Doc. 2.) Plaintiff now moves to remand this action to the Pickaway County court.

II.

Pursuant to 28 U.S.C. § 1447, after a case is removed from State court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case

shall be remanded." 28 U.S.C. § 1447(c). Plaintiff's motion requires the Court to examine the contours of 28 U.S.C. § 1332, the statute vesting the United States District Courts with subject matter jurisdiction based on diversity of citizenship. Plaintiff essentially contends that this statute, if interpreted to grant subject matter jurisdiction to the Court on the facts of this case, exceeds the limits of jurisdiction of the federal courts permitted by Article III of the Constitution. As Plaintiff's motion calls into question the constitutionality of § 1332 as applied to the facts of this case, the Court permitted the United States to intervene in this action pursuant to Rule 5.1. (*See* Doc. 41.)

Anderegg was a citizen of Switzerland but was a permanent resident of the United States, domiciled in Florida at the time of the crash. Defendants are Canadian entities and it is undisputed that they are deemed to be citizens of Canada for purposes of the diversity jurisdiction analysis. Plaintiff is also a citizen of Florida. (Compl. ¶ 7.)

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Section 2 of Article III of the Constitution delimits the jurisdictional power of the judicial branch as follows:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;–between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. CONST. art. III, § 2. While the Congress is vested with authority to limit the jurisdiction of inferior federal courts that it establishes, the Supreme Court long ago held that Congress "cannot

2

extend the jurisdiction [of the federal courts] beyond the limits of the constitution." *Hodgson v. Bowerbank*, 9 U.S. (5 Cranch) 303, 304 (1809).

  Of relevance to the issues pending before the Court, 28 U.S.C. § 1332 provides that:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

. . .

  (2) citizens of a State and citizens or subjects of a foreign state;

. . .

For the purposes of this section, . . . an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

. . .

(c) For the purposes of this section and section 1441 of this title—

. . .

  (2) the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

28 U.S.C. § 1332(a)–(c). Defendants' theory of the Court's jurisdiction in this case is as follows: Plaintiff, as the legal representative of Anderegg's estate, is deemed to be a citizen of the same State as Anderegg. Anderegg, as an alien with permanent residence, is deemed to be a citizen of Florida, where he was domiciled at the time of his death. Accordingly, pursuant to 28 U.S.C. § 1332(a)(2), the amount in controversy exceeds $75,000, and the case consists of a citizen of the State of Florida versus citizens of Canada.

  Plaintiff, however, contends that the interpretation of § 1332 favored by Defendants runs afoul of Article III, § 2, because it results in a grant of subject matter jurisdiction beyond what is permitted by the Constitution. In this regard, while Article III, § 2 allows for suits "between a State, or the Citizens thereof, and foreign States, Citizens or Subjects," U.S. CONST. art. III, § 2, it does not permit actions between aliens. In *Hodgson*, the Supreme Court held that if the Judiciary Act of 1789 were interpreted to allow suits solely between aliens in federal courts, the

3

statutory provisions would be unconstitutional. *See Hodgson*, 9 U.S. (5 Cranch) at 304. According to Plaintiff, this action is removable to this Court only if § 1332 is construed in a manner offending the Constitution. By this reasoning, the Court lacks subject matter jurisdiction and must remand to the State court. In contrast, Defendants urge the Court to find that it possesses jurisdiction by applying the plain meaning of the statute. Finally, the United States is in accord with the view of the Plaintiff, and counsels the Court to interpret the statute in a manner which renders it constitutional. For the following reasons, the Court agrees with Plaintiff and the United States and remands this action to the State court.

## III.

The final sentence of subsection 1332(a) (the "deeming provision") was added to the statute in 1988 by the Judicial Improvements and Access to Justice Act (the "Judicial Improvements Act"). *See* Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, sec. 203(a), 102 Stat. 4642, 4646 (1988). In an unpublished decision, the Sixth Circuit has held that the provision should be interpreted as limiting subject matter jurisdiction in cases in which an alien domiciled in a particular State sues a citizen of that State. *See Nagalingam v. Wilson, Sowards, Bowling & Costanzo*, 8 Fed. App'x 486, 488 (6th Cir. 2001). While the Sixth Circuit has never had occasion to interpret the deeming provision in cases similar to this matter, the Third, Seventh, and D.C. Circuits have addressed the same issue, with each reaching somewhat different results.

The first of these cases, *Singh v. Daimler-Benz AG*, 9 F.3d 303 (3rd Cir. 1993), involved a plaintiff, representing the estate of his father who was a permanent resident alien domiciled in Virginia, who sued two defendants—one a German Corporation and the other that corporation's American distributor. *See id.* at 304–05. The American distributor was incorporated in

4

Delaware and had its principal place of business in New Jersey. *Id.* at 304. In *Singh*, the Third Circuit relied upon the plain meaning of the deeming provision, which purportedly vests the district courts with subject matter jurisdiction. *See id.* at 306. The Court further held that the legislative history of the Judicial Improvements Act was inconclusive as to Congress's intent, stating that:

> In short, while we agree with Singh that there is nothing in the legislative history of the 1988 Act that suggests that Congress intended the permanent resident alien provision to expand diversity jurisdiction, there is also nothing to support Singh's view that the entire 1988 Act was characterized by a "clarity of purpose" to reduce diversity jurisdiction.

*Id.* at 309.

In *Saadeh v. Farouki*, 107 F.3d 52 (D.C. Cir. 1997), the D.C. Circuit held that the deeming provision should be interpreted to restrict the diversity jurisdiction of the district courts and not to expand it. *See id.* at 61. The Court concluded that the legislative history of the Judicial Improvements Act revealed an intent of Congress to reduce the caseloads of the district courts, and that an interpretation of deeming provision in accord with that intent was preferable because it avoided potential questions of the deeming provision's constitutionality. *See id.* at 58–61 ("A literal reading of the 1988 amendment to § 1332(a) would produce an odd and potentially unconstitutional result. It would both partially abrogate the longstanding rule of complete diversity, and create federal diversity jurisdiction over a lawsuit brought by one alien against another alien, without a citizen of a state on either side of the litigation."). *Saadeh* involved an alien plaintiff suing a corporate citizen of the District of Columbia and a permanent resident alien domiciled in Maryland. *See id.* at 55 n.4, 61.[1] In *Saadeh*, the D.C. Circuit

---

[1] While the District of Columbia corporation was dismissed from the case on stipulation of the parties, id. at 54, and the record was unclear whether the corporation was actually defunct at the time the suit was filed, the Court

5

expressly disagreed with the conclusion reached by the Third Circuit in *Singh* that the legislative history of the Judicial Improvements Act was inconclusive. *See id.* at 60.

Finally, in *Intec USA, LLC v. Engle*, 467 F.3d 1038 (7th Cir. 2006), the Seventh Circuit interpreted the deeming provision as requiring courts to consider permanent resident aliens to have two citizenships—one in their State of domicile and the other in their country of citizenship—for purposes of diversity jurisdiction analysis. *See id.* at 1043. In reaching its conclusion, the Court acknowledged that its interpretation could, in limited circumstances, support an expansion of diversity jurisdiction. *See id. Intec* involved a dispute between a group of plaintiffs consisting of citizens of North Carolina and a citizen of New Zealand domiciled in North Carolina and a group of several alien defendants. *See id.* at 1041.

The Court notes that each of these cases is distinguishable from the instant dispute as each involved a "citizen of a State" on one side of the lawsuit, whereas this case involves a dispute solely between a permanent resident alien and non-permanent resident aliens. While statutes vesting the district courts with diversity jurisdiction have usually been interpreted to require complete diversity—that is, no plaintiff can share citizenship with any defendant—Article III, § 2 of the Constitution itself has been construed to only require minimal diversity, meaning that only one set of opposing parties must be diverse. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530–31 (1967). Both *Singh* and *Saadeh* involved suits by aliens against citizens of particular States and other aliens. Accordingly, even if such a combination were possibly outside the scope of any construction of § 1332(a) (as the D.C. Circuit held in *Saadeh*), jurisdiction could still lie under Article III, § 2, which allows Congress to vest the district courts with jurisdiction over suits between citizens of a particular State and aliens. As

---

proceeded "on the basis that [the corporation] existed for jurisdictional purposes; were it non-extant when Saadeh filed his complaint, not even minimal diversity would exist." *Id.* at 55 n.4.

6

noted by the Third Circuit in *Singh*, "[t]he alleged constitutional issue that might arise when one alien sues another is not presented in this case because there is a citizen party, thereby satisfying minimal diversity." *Singh*, 9 F.3d at 312.

This case, however, presents a different circumstance because it involves aliens on both sides of the dispute. As stated in Part II *supra*, Article III, § 2 does not permit Congress to vest the inferior federal courts with jurisdiction over suits involving only aliens. Therefore, the plain meaning of the deeming provision, which Defendants advocate and which serves as the sole possible basis of Defendants' removal of this action, poses serious constitutional problems. Stated differently, even if the Court were to adopt the plain meaning of the deeming provision as Defendants urge it to do, the constitutionality of the deeming provision would be in doubt when applied to the facts of this case.

"It has long been an axiom of statutory interpretation that 'where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.'" *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 466 (1989) (quoting *Edward J. DeBartolo Corp., v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)). *See also United States v. Coatoam*, 245 F.3d 553, 558 (6th Cir. 2001) ("When, however, a plain meaning analysis of a statute produces an absurd result, in that the interpretation is clearly at odds with Congress's intent in drafting the statute, then the language of the statute must yield to interpretive guidance from legislative history or statutory structure."). Accordingly, this Court may look to the legislative history of the deeming provision and the Judicial Improvements Act to determine if Congress plainly intended the likely unconstitutional result that would occur if the deeming provision were applied to the facts of this case.

In considering the legislative history, the Court adopts the reasoning in *Saadeh* that Congress, in enacting the deeming provision and the Judicial Improvements Act itself, intended to restrict diversity jurisdiction in the federal courts and not expand it. There, the Court noted that the deeming provision was likely the conception of the Judicial Conference of the United States, which advocated its inclusion in the bill to prevent diversity suits in cases involving aliens domiciled in a State and citizens of the same State. *Saadeh*, 107 F.3d at 58. The intentions of the Judicial Conference were mirrored by comments of Senator Howell Heflin, who sponsored the Judicial Improvements Act in the Senate. *Id.* at 59. Additionally, the Court determined that one of the overall purposes of the Judicial Improvements Act was to reduce the caseload of the federal courts. *Id.* at 59–60. The Court ultimately concluded that:

> Given the reasoning underlying the recommendation for the alienage provision and the general expressions of legislative intent for the Judicial Improvements Act, in the absence of contrary evidence, we conclude that Congress intended to contract diversity jurisdiction through the 1988 amendment to § 1332(a), not to expand it by abrogating the longstanding rule that complete diversity is destroyed in lawsuits between aliens.

*Id.* at 60. As the legislative history supports the interpretation that the deeming provision was intended by Congress to restrict as opposed to expand diversity jurisdiction in cases involving permanent resident aliens, that interpretation of the provision is preferable because it does not raise constitutional questions.

Defendants contend that the Court is precluded from examining the legislative history of the deeming provision because the provision is constitutional as applied to the facts of this case. In support of this position, Defendants cite Article I, § 8, Clause 4 of the Constitution, which grants Congress the power to establish a naturalization process. Defendants, however, cite no case law standing directly for the proposition that Congress invoked this authority in enacting the deeming provision, or that the naturalization authority would allow Congress to change the status

8

of an alien to that of citizen for some purposes but not for others. In *Singh*, relied upon by Defendants, the Third Circuit expressly declined to reach the related issue of whether some other source of constitutional authority would permit Congress to enact the deeming provision. *See Singh*, 9 F.3d at 312. As noted above, when applied to the facts of Singh, the deeming provision would lead to a constitutional result because of the minimum diversity requirement of Article III, § 2.

Finally, other cases cited by Defendants as authority for the proposition that Congress has inherent power to expand the diversity jurisdiction of the federal courts are distinguishable from the facts of this case. For instance, the Supreme Court's decision in *National Mutual Insurance Co. of the District of Columbia v. Tidewater Transfer Co.*, 337 U.S. 582 (1949) addresses the issue of whether Congress had the authority to include the District of Columbia within the definition of "State" for purposes of diversity jurisdiction. A majority of the fractured Court concluded that Congress does possess such authority. Justice Jackson's plurality opinion assumed that the District of Columbia is not a State for purposes of Article III, § 2, but reasoned that Congress's power to open the district courts to citizens of the District of Columbia arose from Article I, § 8, Clause 17, which is the source of Congress's authority over the said district. *See id.* at 588–89 (Jackson, J., plurality opinion); U.S. CONST. art. I, § 8, cl. 17.[2] As *National Mutual Insurance Co.* dealt specifically with Congress's authority over the affairs of the District of Columbia, the holding of the plurality opinion cannot be extended to support the position advanced by Defendants.

---

[2] In contrast, in his concurring opinion, Justice Rutledge, disagreed with the plurality's reasoning on the grounds that "the Article III courts in the several states cannot be vested, by virtue of other provisions of the Constitution, with powers specifically denied them by the terms of Article III." *Nat't Mut. Ins. Co.*, 337 U.S. at 607 (Rutledge, J., concurring). Justice Rutledge, however, would have upheld the constitutionality of Congress's action by overturning longstanding precedent suggesting that the District of Columbia was not a State for purposes of Article III, § 2. *See id.* at 626.

9

IV.

Because the Sixth Circuit has not directly addressed the issues presented herein, and the fact that § 1332(a) on its face arguably supported removal to this Court, the Court declines to award fees and costs to Plaintiff.

V.

For the reasons set forth above, the Court holds that the deeming provision of 28 U.S.C. § 1332(a), cannot be interpreted as vesting this Court with subject matter jurisdiction over a dispute involving only aliens. Accordingly, Plaintiff's Motion to Remand (Doc. 15) is **GRANTED**. This action is remanded to the Court of Common Pleas of Pickaway County.

**IT IS SO ORDERED.**

_____9-6-2011_____
**DATED**

_____
**EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE**